[Nos. 3251–2; 3246–2;  Division Two.  March 19, 1979.]
3295–2.

THE STATE OF WASHINGTON, *Respondent,* v. DARRELL
WAYNE FAUCETT, *Appellant.*

*Robert B. Taub,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Darrell Wayne Faucett appeals his convictions by a jury of second–degree robbery and taking a motor vehicle without permission. The appeal involves solely the validity of certain of the court's instructions to the jury. We affirm.

In the early morning hours of August 28, 1977, defendant entered a doughnut shop and demanded the keys to the car of the employee working behind the counter. Defendant kept his left hand in his pocket, giving the impression that he was armed. After saying that he had a bomb and threatening to "blast" the employee, defendant went to the back of the shop, took money from a bank bag, and escaped in the employee's car.

Defendant first assigns error to the court's instruction No. 11:

> You are instructed that the intent to defraud and deprive, which is one of the elements of the offense of Robbery, as charged in the Information of this case, while it must be proved by competent evidence beyond a reasonable doubt, need not be proved by direct and positive evidence, but the existence of such intent may be established by proof of the acts of the parties and the facts and circumstances surrounding them; and in this connection, every person is presumed to intend the natural and usual consequences of his act.

This instruction is challenged on two grounds. First, defendant argues that it erroneously includes an intent to defraud and deprive as an element of robbery. RCW

9A.56.190 defines robbery to include (1) the unlawful taking (2) of personal property (3) from the person or presence of another (4) against his will (5) by the use or threatened use of force.[1] The statutory elements presuppose that intent to deprive the victim of the property is a necessary element of robbery. *See, e.g., State v. Byers,* 136 Wash. 620, 622, 241 P. 9 (1925); *State v. Carter,* 4 Wn. App. 103, 109, 480 P.2d 794 (1971). As stated by Professors W. LaFave and A. Scott in their *Handbook on Criminal Law* § 94 (1972), at page 692:

> Robbery consists of all six [common–law] elements of larceny . . . plus two additional requirements: [1] that the property be taken from the person or presence of the other and [2] that the taking be accomplished by means of force or putting in fear.

(Footnotes omitted.) The elements of theft—a crime equated with larceny in our revised criminal code, RCW 9A.56.100—are defined in RCW 9A.56.020 to include the intent to deprive.[2]

We note that in instruction No. 7, the court properly informed the jury of the elements of robbery by closely paraphrasing RCW 9A.56.190. Inasmuch as the intent to

---

[1]RCW 9A.56.190 contains the following definition:

"Robbery—Definition. A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear."

[2]RCW 9A.56.020 defines theft as follows:

"Theft—Definition, defense. (1) 'Theft' means:

"(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

"(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or

deprive is an element of larceny, or theft, and is also an underlying element of robbery, the challenged instruction No. 11, when taken together with instruction No. 7, was not erroneous.

■ It is true that the reference to an "intent to *defraud* and deprive" in instruction No. 11 was somewhat out of place in this prosecution because, while deception is an element of some forms of theft, it was not a necessary element of proof of this robbery. Defendant contends that keeping his hand in his pocket while demanding the victim's car keys may have allowed the jury to follow instruction No. 11 and convict him of robbery based upon a "trick" rather than a threatened use of force. But this holds no water. The jury could not have convicted defendant of robbery without finding, under the definitional instruction No. 7, together with related instructions Nos. 10 and 12, that the money was taken by the use or threatened use of force.[3] The instructions, when construed as a whole, correctly stated the elements of robbery, and the use of the word "defraud" in instruction No. 11 was not prejudicial error. *Cf. State v. Flores*, 18 Wn. App. 255, 566 P.2d 1281 (1977) (the use of the word "substantial" to describe a reasonable doubt was erroneous, but not prejudicial error).

The second prong of defendant's challenge to instruction No. 11 is that the rule of *State v. Roberts*, 88 Wn.2d 337, 562 P.2d 1259 (1977), is violated by the statement that every person is presumed to intend the natural and usual

---

"(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

"(2) In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable."

[3]Instruction No. 10 provides:

"You are instructed that the degree of force is immaterial if it was sufficient to compel the victim to part with any personal property or money the victim may have had in his possession or presence."

Instruction No. 12 provides:

"If you find from the evidence beyond a reasonable doubt all of the following alleged facts, to-wit:

consequences of his act. *Roberts* requires that if a presumption is used to establish an element of a criminal offense, the fact presumed must follow from the facts proven beyond a reasonable doubt. We have recently passed upon the validity of the challenged phrase in *State v. Vandiver,* 21 Wn. App. 269, 276, 584 P.2d 978 (1978), and *State v. Osborne,* 18 Wn. App. 318, 569 P.2d 1176 (1977). Although we continue to adhere to the reservations expressed in *Vandiver* about the instruction, we likewise find no error in its use here.

Defendant's next assignment of error is against the italicized portion of the court's instruction No. 22 which told the jury that:

When you go into your jury room to deliberate upon your verdict, while you may discuss the case together and reason with one another, before you make up your verdict, each of you must make up your own mind without reference to the other jurors whether or not the defendant is guilty. The defendant is entitled to an unbiased opinion of each and every juror, and if any juror is not convinced of the defendant's guilt as charged, beyond a reasonable doubt, he should not surrender his opinion thereon for the purpose merely of having an agreed verdict.

In short, when men and women are jurors they sit as individuals so far as their individual verdict is concerned, and each juror should be governed by his own conscience and not by the minds and conscience of his or her fellow jurors.

This instruction does not mean that the jury shall not discuss the evidence with each other before arriving at their conclusions thereon. It means that a juror should

---

"(1) That the defendant, Darrell Wayne Faucett, did take personal property from the person and in the presence of Patricia Anne Beals, an employee of Winchell's Donut House;

"(2) That the taking of such property was against the will of the said Patricia Anne Beals, by use or threatened use of immediate force or violence or fear of immediate injury;

"(3) That such act occurred in Pierce County, Washington, on or about the 28th day of August, 1977;

"Then you shall find the defendant, Darrell Wayne Faucett, guilty of the crime of Robbery in the Second Degree as charged in Count I of the information."

not consent to a verdict which he thinks contrary to the evidence out of mere deference to his fellow jurors. *A juror, however, has the right to consider whether a doubt in his mind is a reasonable one which makes no impression on the minds of others, equally honest and equally intelligent with himself, who have heard the testimony out of which the doubt arises, and he may properly change his views because of his consideration.*

(Italics ours.)

█ The alleged defect in this language is that it could coerce a lone holdout in a jury deadlocked 11 to 1 to change his vote in the interests of reaching a verdict, because it suggests that the holdout should surrender his opinion. Albeit with some reluctance, we upheld the use of the same instruction, in the face of a similar challenge, in *State v. Butler,* 9 Wn. App. 347, 513 P.2d 67 (1973). We agree that the instruction fails to make it entirely clear that a juror ought not abandon his personal conviction. *See United States v. Bilotti,* 380 F.2d 649, 654 (2d Cir. 1967). A preferable instruction is WPIC, 11 Wash. Prac. 1.04 (1977), which articulates more concisely the jurors' duty to consult among themselves, yet not surrender their individual convictions solely because of the opinions of others or in order to reach a verdict.[4] Nevertheless, as in *Butler,* we decline to hold that this instruction, taken in its entirety, misled the jurors in their responsibility not to surrender their individual verdicts to the majority opinion.

Finally, defendant contends instruction No. 20 is faulty because it told the jury they "will be slow to believe that any witness has testified falsely in the case." The entire instruction is as follows:

---

[4]WPIC, 11 Wash. Prac. 1.04 (1977) states:

"Jurors have a duty to consult with one another and to deliberate with a view to reaching a unanimous verdict, if it can be done without violence to individual judgment. Each of you must decide the case for yourself but only after an impartial consideration of the evidence with your fellow jurors. In the course of deliberations, you should not hesitate to re-examine your own views and change your opinion if you are convinced it is erroneous. However, you should not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors, or for the mere purpose of returning a verdict."

You are the sole and exclusive judges of the evidence and of the credibility of the several witnesses and of the weight to be attached to the testimony of each. In weighing the testimony of a witness, you have a right to consider his demeanor upon the witness stand, the apparent fairness or lack of fairness, the apparent candor or lack of candor of such witness, the reasonableness or unreasonableness of the story such witness relates, and the interest, if any, you may believe a witness feels in the result of the trial, and any other fact or circumstance arising from the evidence which appeals to your judgment as in any wise affecting the credibility of such witness, and to give to the testimony of the several witnesses just such degree of weight as in your judgment it is entitled to.

*You will be slow to believe that any witness has testified falsely in the case,* but if you do believe that any witness has wilfully testified falsely to any material matter, then you are at liberty to disregard the testimony of such witness entirely, except in so far as the same may be corroborated by other credible evidence in the case.

(Italics ours.)

The defendant asserts this instruction improperly sets up a presumption of witness credibility which is inconsistent with the presumption of innocence. Stated another way, the jury should view the State's witnesses with some degree of skepticism, but if they are instructed to assume the witnesses are truthful, they are less likely to find a reasonable doubt. Also, it is alleged to be a comment on the evidence, *i.e.,* an implication that the testimony should be believed.

In the abstract, we see nothing wrong with a presumption that any witness will abide by his solemn oath to tell the truth while on the stand. In *Cupp v. Naughten,* 414 U.S. 141, 38 L. Ed. 2d 368, 94 S. Ct. 396 (1973), the Supreme Court upheld the validity of an instruction used in an Oregon court which provided that:

"Every witness is presumed to speak the truth. This presumption may be overcome by the manner in which the witness testifies, by the nature of his or her testimony, by evidence affecting his or her character, interest, or motives, by contradictory evidence, or by a presumption."

*Cupp v. Naughten, supra* at 142. *Cupp* held that the giving of this instruction did not offend due process as long as the jurors were instructed also on the presumption of innocence and the standard of proof beyond a reasonable doubt.

■ However, *Cupp* does not address the effect that a state constitutional prohibition against a judge's comment on the evidence, such as ours in Const. art. 4, § 16, would have on a presumption–of–truthfulness instruction. The test is whether the judge's instruction could have caused the jury reasonably to infer that he believed or disbelieved a witness, and that prejudice resulted. *State v. Bowen,* 12 Wn. App. 604, 611, 531 P.2d 837 (1975).

In civil cases, an instruction that the jury will be slow to believe that any witness testified falsely has been allowed when coupled with a charge that the jury are the sole and exclusive judges of the evidence and of witness credibility and of the weight to be attached to each. *E.g., Larson v. Union Inv. & Loan Co.,* 168 Wash. 5, 10 P.2d 557 (1932). We are not completely convinced of the wisdom of this charge in a criminal case because—especially when a defendant declines to testify, as here—the court can be seen as indicating its own belief in the truthfulness of the unrebutted testimony of the State's witnesses. *See United States v. Bilotti, supra* at 656. Accordingly, we think that a preferable instruction on the credibility and weight of the testimony is WPIC 6.01:

> You are the sole judges of the credibility of the witnesses and of what weight is to be given the testimony of each. In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to observe, the witness' memory and manner while testifying, any interest, bias, or prejudice the witness may have, the reasonableness of the testimony of the witness considered in light of all the evidence, and any other factors that bear on believability and weight.

The first paragraph of instruction No. 20 is, of course, a paraphrase of WPIC 6.01.

■ Having expressed misgivings about a portion of instruction No. 20, we decline to hold that its use here was

prejudicial error. The court did instruct the jury in its instruction No. 4 on the presumption of innocence and the need for proof of guilt beyond a reasonable doubt, as required in *Cupp* to satisfy due process. And, as in *Bilotti,* the court's charge to the effect that witnesses are presumed to tell the truth was tempered by a further explanation that the jury for a variety of reasons could disbelieve any witness and disregard his or her testimony. In short, while the slow–to–believe phrase is fairly viewed as a comment on the State's testimony when the defendant elects not to take the stand, and its use should be avoided, we hold that the remainder of that instruction, when read together with others given by the court, was sufficient to eliminate the possibility of prejudicial error in this case. *See State v. Haye,* 72 Wn.2d 461, 475, 433 P.2d 884 (1967).

The convictions, and the resultant revocation of two deferred sentences which defendant has also appealed herein, are affirmed.

PEARSON, C.J., and PETRIE, J., concur.